RECEIVED
OCT 17 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RANDALL GLEN MATTHEWS, CHARLES ALAN MATTHEWS, SR., AND CASH 'N A FLASH, INCORPORATED | CIVIL ACTION NO. 03-2124 |
| VERSUS | JUDGE DONALD E. WALTER |
| MAURICE CUNNINGHAM, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court are Motions for Summary Judgment filed on behalf of defendants, Roger Courtney and Larry M. Cunningham [Doc. #33], and on behalf of defendants, Allen Johnson, Michael Tyler, Tim Hunt, Eric Miles, Shanna Winn, Gabriel Horton, Craig Ivy, Shannon Mack, Patrick Duncan, Anthony Rei and the City of Shreveport [Doc. #31], pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose these motions. For the reasons assigned herein, defendants' motions are **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT OF THE CASE

Plaintiffs, Randall Glen Matthews, Charles Alan Matthews, Sr. and Cash 'N A Flash, Inc. ("Plaintiffs"), bring this action against multiple Shreveport law enforcement officers in their individual and official capacities, and against the City of Shreveport (the "City"), asserting that Plaintiffs' constitutional rights were violated when "high priced" items were seized from Plaintiffs' pawn shop pursuant to a search warrant issued as a result of an investigation of a "two for one" scam. Plaintiffs also assert state constitutional and tort claims.

Defendant, Corporal Roger Courtney ("Courtney"), a detective for the Shreveport Police

Department (the "SPD"), was investigating a "two for one" scam that was being used to steal from merchants in the Shreveport area. According to Courtney, the scam worked as follows: suspects would enter a business, frequently a Wal-Mart store; one suspect would purchase a "high dollar" item, such as a computer, and would leave the store with a cash receipt. The other suspect would take that receipt, re-enter the store and leave the store with an identical item. One of the items might be returned, and the other item or items would then be sold, new and in the box, to third persons. Defendants' Exh.1, Courtney Aff., ¶2.

Wal-Mart personnel had been able to generally describe the suspects, but on February 26, 2003, Stephanie Blackmon ("Blackmon"), a loss prevention specialist for Wal-Mart, saw the face of the female suspect. Id. at ¶3; Plaintiffs' Exh. 11, Blackmon Depo., pp. 14-17, 43-44. On that date, the electronics department manager told Blackmon that two new Sony computers recently placed on the shelf were gone, but only one had been sold. Plaintiffs' Exh. 11, Blackmon Depo., p. 7. Blackmon reviewed the video surveillance tapes and saw a man walk out with one computer, and a woman walk out with the other. Id. at p. 8. Blackmon reported that information to Courtney. Id. at pp. 14-16.

Blackmon described the woman she believed to be involved in the theft to employees at other Wal-Mart stores in Shreveport, and eventually discovered that the suspect's name was Debra Pardee. Id. at pp. 44-45.[1] Blackmon also identified Debra Pardee in a photographic line up conducted by Courtney. Id. at p. 45; Defendants' Exh. 1, Courtney Aff., ¶5.

---

[1] Blackmon testified in her deposition that the Wal-Mart store located on Pines Road had a photograph of a woman identified as Debra Pardee who had been caught leaving the store with a trolling motor without paying for it. Plaintiffs' Exh. 11, Blackmon Depo., pp. 44-45.

2

Sergeant Kevin Ross ("Ross") of the Bossier City Police Department (the "BCPD"), a detective assigned to pawn shop detail, in reviewing daily pawn tickets from Bossier City pawn shops, noticed several items being sold to pawn shops by Debra Pardee ("Pardee") and "Todd Russell" ("Todd")². Plaintiffs' Exh. 6, Ross Depo., pp. 12-16. The items being sold by Pardee and Todd were electronic items such as computers, monitors and "DVDs." Id. at p. 15. Ross contacted Courtney and advised that "if [Courtney] had any thefts or big thefts of those type of items, he may want to look at those two suspects." Id. at p. 16; see also Plaintiffs' Exh. 5, Courtney Depo., pp. 12-13.

Courtney researched the SPD reporting system database and found that Pardee and Todd were listed together numerous times "indicating a common link and common association between the two." Defendants' Exh. 1, Courtney Aff., ¶5. Todd also fit the general description of the male suspect given Courtney by Blackmon. Id. Courtney states in his affidavit that Todd sold a Sony computer system to Cash 'N A Flash on February 26, 2003. Id. at ¶5.

On May 15, 2003, Courtney and Ross went to Cash 'N A Flash and reviewed items in the public area of the pawn shop that Courtney and Ross believed had been sold to the pawn shop by Pardee and Todd. Id. at ¶8; Plaintiffs' Exh. 6, Ross Depo., pp. 10-12; Plaintiffs' Exh. 5, Courtney Depo., pp. 9-13, 18-20. Sergeant Bill Bobbitt ("Bobbitt"), Courtney's supervisor, and Detective Thigpen ("Thigpen"), both of the SPD, joined Courtney and Ross at Cash 'N A Flash. Plaintiffs' Exh. 5, Courtney Depo., p. 10. Courtney, and possibly Bobbitt and Thigpen, removed approximately

---

²Throughout the excerpts of Ross' deposition submitted by plaintiffs, Ross repeatedly refers to the male suspect as "Todd Russell." However, Courtney refers to the male suspect as "Russell Todd" in his affidavit in support of his motion, and the affidavit in support of the search warrant application at issue in this case. Courtney testified in his deposition that the male suspect was known by both names. Plaintiffs' Exh. 5, Courtney Depo., p. 12.

3

two dozen items from the shelves in the pawn shop and placed them on the floor. Plaintiffs' Exh. 7, Matthews Depo., pp. 171-172, 223-224; Plaintiffs' Exh. 5, Courtney Depo., pp. 20, 23. Defendants Courtney and Cunningham's Statement of Undisputed Facts ("SUF"), ¶20. According to Randall Matthews ("Matthews"), manager of Cash 'N A Flash, Courtney stated that he was going to inspect some items in the back of the pawn shop. Plaintiffs' Exh. 7, Matthews Depo., p. 93. Matthews told Courtney that he could not, and asked Courtney and the Shreveport officers to leave the pawn shop. Id. at pp. 93-96. Courtney, Bobbitt and Thigpen left Cash 'N A Flash approximately ten minutes after Matthews asked them to leave. Id. at pp. 96-97.

Courtney prepared a written "narrative supplement" regarding his activities in the investigation of the "two for one" scam. Defendants' Exh. 1, Courtney Aff., ¶9. Courtney reported to Cunningham, generally, regarding Courtney's investigation. Defendants' Exh.2, Cunningham Aff., ¶3. Cunningham used Courtney's narrative supplement and the information obtained through discussions with Courtney to prepare the search warrant application and the affidavit in support of the application. Id. at ¶4; Defendants' Exh. 1, Courtney Aff., ¶9. Courtney read and signed the affidavit. Defendants' Exh. 1, Courtney Aff., ¶9.

On May 16, 2003, Courtney accompanied Ross to present the search warrant application to a Bossier Parish District Judge. Id. at ¶9; Plaintiffs' Exh. 6, Ross Depo., pp. 23-25. After requiring Courtney to take an oath that the information in the affidavit was correct, Judge Cecil P. Campbell, II reviewed and signed the warrant application. Plaintiffs' Exh. 10, Judge Campbell Depo., pp. 9-11. That same day, the search warrant was executed. Defendants' Exh. 1, Courtney Aff., ¶10.

Cunningham supervised the execution of the search warrant. Defendants' Exh. 2, Cunningham Aff., ¶5. Cunningham identified items that were pawned or sold by the suspects,

Pardee, Todd, and, because of the suspects' practice of using false names, items sold by persons using addresses known to have been used by Pardee and Todd. Cunningham relied upon Cash 'N A Flash personnel to identify the particular merchandise, as the merchandise itself was not marked with the name or address of the person selling the item to Cash 'N A Flash. Defendants Courtney and Cunningham's SUF, ¶15.

Sergeant Allen Johnson, and Detectives Shanna Winn, Anthony Rei, Gabriel Horton, Michael Tyler, Craig Ivy, Shannon Mack, Patrick Duncan, Tim Hunt and Eric Miles, all named defendants in this matter, assisted Cunningham in executing the search warrant on May 16, 2003. City's Exh. 2. Courtney did not determine what items satisfied the search warrant. Rather, Courtney read serial numbers from items already gathered and stacked in the back of Cash 'N A Flash. Defendants' Exh. 1, Courtney Aff., ¶10. Ross, and other BCPD law enforcement officers, were present during the execution of the search warrant, but, based solely on the evidence provided this Court in connection with the motions at issue, did not participate. Plaintiffs' Exh. 6, Ross Depo., pp. 27-28.

According to Cunningham, the inventory tracking capabilities, or lack thereof, of the victim retail stores delayed an attempt to obtain "additional" proof that the items seized were, in fact, stolen. Defendants' Exh. 2, Cunningham Aff., ¶¶ 7, 8; Plaintiffs' Exh. 4, Rei Depo., pp. 47-48. The seized items were eventually returned to Cash 'N A Flash.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311. However, where the moving party bears the burden of proof on an issue, it must produce evidence that would, if uncontroverted at trial, warrant a judgment as a matter of law. International Short Stop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936 (1992).

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any

proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

Pursuant to Local Rule 56.1, the moving party shall file a statement of material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

I. **Claims Against Shreveport Law Enforcement Officers.**

    A. **§1983 and State Law Claims Related to Fourth Amendment Search and Seizure.**

        1. Qualified Immunity Analysis.

The determination of immunity is a threshold question that must be resolved inasmuch as it determines a defendant's immunity from suit rather than immunity from damages. Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993). The court must use a two-step analysis to determine whether a defendant is entitled to qualified immunity: (1) has the plaintiff alleged the violation of a clearly established constitutional right; and (2) was the defendant's conduct objectively reasonable? See Williams v. Bramer, 180 F.3d 699, 702 (5th Cir. 1999).

First, the court must determine whether the plaintiff has alleged a deprivation of a constitutional right at all. Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). This determination is made using currently applicable constitutional standards. Nerren v. Livingston Police Department, 86 F.3d 469, 473 (5th Cir. 1996). If so, the court must then

decide if the defendant's conduct was objectively reasonable, using the standards applicable at the time the events occurred. Id.; Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir. 1994). If, upon viewing the evidence in the light most favorable to the non-movant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992).

The doctrine of qualified immunity shields public officials "performing discretionary functions 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Fraire, 957 F.2d at 1273, quoting Anderson, 483 U.S. at 638. The qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Louisiana applies qualified immunity principles to state constitutional law claims based on "[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under §1983." Moresi v. Dep't of Wildlife and Fisheries, 567 So.2d 1081, 1093 (La. 1990); Roberts v. City of Shreveport, 397 F.3d 287, 296 (5th Cir. 2005). Inasmuch as plaintiffs' claims under state constitutional law parallel entirely their §1983 allegations, the individual defendants are entitled to qualified immunity for the reasons discussed herein.

    2.    *Franks* Claims - Claims Related to Procurement of the Search Warrant.

The SPD detectives named as defendants in their individual capacities, other than Courtney and Cunningham, have provided this Court affidavits wherein each states that he or she was not involved in the procurement of the search warrant. City's Exh. 2. Plaintiffs have provided no

8

evidence to the contrary. Thus, any claims related to procurement of the search warrant asserted against defendants Winn, Rei, Horton, Johnson, Tyler, Ivy, Mack, Duncan, Hunt and Miles are dismissed for lack of involvement.

In their reply to plaintiffs' opposition, defendants Courtney and Cunningham suggest that the claim against Cunningham related to procurement of the warrant should be dismissed since "Cunningham did not supply the information in the warrant but merely typed the affidavit from Cpl. Courtney's report." Defendants' Reply, p. 6. Defendants are mistaken. In Michalik v. Hermann, 422 F.3d 252 (5th Cir. 2005), the Fifth Circuit clearly held that "liability under Malley[3] may lie not only against the affiant but also against . . . an officer who actually prepares the warrant application with knowledge that a warrant would be based solely on the document prepared." 422 F.3d at 261. The Michalik Court went on to explain that "[s]uch an officer is in a position to see the whole picture, to understand his responsibility, and thus fully to assess probable cause questions." Id. Thus, it seems Cunningham could be liable as he states in his affidavit, and Courtney confirms, that Cunningham prepared the warrant application and its accompanying affidavit based upon his discussion with Courtney and Courtney's report regarding the investigation. Defendants' Exh. 2, Cunningham Aff., ¶4; Defendants' Exh. 1, Courtney Aff., ¶9. However, as discussed below, both Courtney and Cunningham are entitled to qualified immunity.

To prevail on claims related to procurement of the search warrant, plaintiffs must demonstrate that a genuine issue of material fact exists as to whether defendants knowingly provided false information to secure the search warrants or gave false information in reckless disregard for

---

[3]In Malley, 475 U.S. at 344-45, 106 S.Ct. at 1098, the Supreme Court held that a police officer may be held liable in his individual capacity for filing an application for an arrest warrant without probable cause.

9

the truth. Michalik, 422 F.3d at 258 n. 5; Freeman v. County of Bexar, 210 F.3d 550, 553 (5th Cir. 2000), citing Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The evidence provided shows that the following statement in Courtney's affidavit is false: "[Blackmon] WAS ABLE TO DETERMINE THAT THE SERIAL NUMBER OF THE MISSING COMPUTER SYSTEM WAS 272426074, THIS ITEM WAS SOLD TO CASH 'N A FLASH PAWN SHOP . . . ON FEBRUARY 26, 2003 BY RUSSELL TODD."[4]

To demonstrate reckless disregard for the truth, the plaintiff must show that the officer "entertained serious doubts" as to the truth of the disputed statements in his affidavit. See Hart v. O'Brien, 127 F.3d 424, 448 (5th Cir. 1997), abrogation on other grounds recognized by Spivey v. Robertson, 197 F.3d 772, 775 (5th Cir. 1999), citing Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Allegations of negligence and innocent mistakes are not sufficient to prove a reckless disregard for the truth. United States v. Runyan, 290 F.3d 223, 234 n.6 (5th Cir. 2002). "[T]o constitute a constitutional violation sufficient to overcome the qualified immunity of an arresting officer, the material misstatements and omissions in the warrant affidavit must be of such character that no reasonable official would have submitted it to a magistrate. Furthermore, specific omitted facts must be clearly critical to a finding of probable cause." Morin v. Caire, 77 F.3d 116, 122 (5th Cir. 1996) (internal quotations and citations omitted).

---

[4]Plaintiffs have pointed out other incorrect statements regarding Blackmon's actions in discovering that a theft had occurred on February 26, 2003 at Wal-Mart. For example, plaintiffs assert that Blackmon never told Courtney that she followed the female suspect after she took a computer from the store as reported by Courtney in the search warrant application affidavit. See Plaintiffs' Corrected Statement of Material Facts, ¶24. Blackmon testified in her deposition that she actually watched the events of February 26 unfold on video surveillance tapes. Plaintiffs' Exh. 11, Blackmon Depo., pp. 7-8. This Court finds it relevant to a finding of probable cause that Blackmon actually witnessed the theft, be it in real time or on video.

In support of their motion, defendants submit the affidavit of Courtney wherein he states that at the time of the investigation he believed Blackmon was able to identify the Sony computer system by serial number. Courtney states that, "[a]lthough I recall receiving a number from Ms. Blackmon and believed that I had been provided a serial number, I was dealing with multiple items and numbers so a mistake could have occurred." Defendants Exh. 1, Courtney Aff., ¶6. Defendants also provide the Court Cunningham's affidavit wherein he states that he was aware of no information in Courtney's report or information received that was not accurate. Defendants' Exh. 2, Cunningham Aff., ¶4. Plaintiffs have offered no evidence to contradict Courtney's and Cunningham's affidavits. Rather, plaintiffs assert that, based on Courtney's and Ross' deposition testimony, plaintiffs believe Courtney obtained the serial number from Ross who obtained the number from the pawn tickets turned in daily by Cash 'N A Flash to the BCPD. At the most, the evidence before the Court might raise an issue as to negligence on the part of Courtney and/or Cunningham. However, this showing is not sufficient to deny Courtney or Cunningham qualified immunity, and defeat summary judgment.

Drawing all disputed inferences in favor of plaintiffs, the court must disregard any such properly contested statements in the affidavit and then determine whether the warrant would establish probable cause without the allegedly false information. Freeman, 210 F.3d at 553; see Franks, 438 U.S. at 171, 98 S.Ct. 2674.

Redacting the false statement, the affidavit included the following information relevant to a finding of probable cause:

(1) Courtney interviewed Blackmon and Upshaw, loss prevention agents for Shreveport Wal-Mart stores;

11

(2) both Blackmon and Upshaw described a scam involving an unknown white female and an unknown white male where both suspects would enter Wal-Mart, get an empty shopping cart and proceed to the electronics department; one of the suspects would use cash to purchase a "high dollar value" item, such as a computer printer, computer monitors, and entire computer systems, and then exit the store; one of the two suspects would then re-enter the store, get an empty shopping cart, return to the electronics department, place the same type of item just purchased in the empty cart and walk out of the store without paying for the second item;

(3) Blackmon was monitoring the electronics department at a Wal-Mart store on February 26, 2003;

(4) on February 26, 2003, Blackmon saw the two suspects enter Wal-Mart and retrieve a shopping cart;

(5) Blackmon then saw the male suspect proceed to the electronics department by himself, purchase a Sony computer system with cash and exit the store with the computer system;

(6) Blackmon then saw the female suspect enter Wal-Mart, take an empty shopping cart to the electronics department, place a Sony computer system into the cart and exit the store without paying for the item;

(7) Blackmon saw the female suspect get into a small white car that was driven away;

(8) Blackmon determined that two complete Sony computer systems were gone but that only one had been sold;

(9) in April 2003, Courtney obtained information from Ross that a white female and a white male, identified as Debra Pardee and Russell Todd, respectively, had sold approximately 300 items to Cash 'N A Flash in 2003, a majority of which were computer systems, monitors, printers and scanners;

(10) Blackmon identified Debra Pardee as the female suspect in a photographic line up;

(11) Courtney found that Pardee shared a common link and common association with Todd, and that Pardee and Todd have been identified as brother and sister;

(12) Todd sold a Sony computer system to Cash 'N A Flash on February 26, 2003; and

(13) Pardee was arrested November 5, 2002 at a Wal-Mart store for placing a $324.71 trolling motor in a shopping cart and leaving the store without paying for the item.

Plaintiffs must demonstrate an issue of material fact exists as to whether any reasonably

competent officer possessing the information that each officer had at the time he swore his affidavit could have concluded that a warrant should issue. Freeman, 210 F.3d at 553; see Malley, 475 U.S. at 341, 106 S.Ct. at 1096. The court must look to the totality of the circumstances in making this decision. Freeman, 210 F.3d at 554; see Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Even if officers of reasonable competence could disagree on this issue, the defendant officers are still entitled to qualified immunity. Freeman, 210 F.3d at 554.

This Court finds that, without the contested statements, the information included in Courtney's affidavit in support of the search warrant application was sufficient to establish probable cause. Likewise, the Court finds that a reasonably competent law enforcement officer possessing the information as itemized above could have concluded that a warrant should issue. Accordingly, Courtney and Cunningham are entitled to qualified immunity as to plaintiffs' claims regarding procurement of the search warrant.

### 3. Claims Related to the Allegedly Illegal Search on May 15.

Plaintiffs do not contest that the individually named defendants other than Courtney and Cunningham were not involved in the "search" conducted on May 15. City's SUF, ¶5. Further, there is no evidence that Cunningham accompanied Courtney and the other officers on May 15 to Cash 'N A Flash. Thus, any claims related to the May 15 "search" asserted against defendants Cunningham, Winn, Rei, Horton, Johnson, Tyler, Ivy, Mack, Duncan, Hunt and Miles are dismissed for lack of involvement.

The only remaining claim against an individual related to the actions taken on May 15 is that against Courtney. As discussed above, the relevant actions of Courtney on May 15 consisted of his review of items in the public area of the pawn shop, and the removal of approximately two dozen

items from the shelves in the public area of the pawn shop. About ten minutes after Matthews told Courtney he could not inspect items in the back of the pawn shop, Courtney left the premises.

This Court finds that Courtney's actions on May 15 do not rise to the level of a deprivation of a constitutional right. Siegert, 500 U.S. at 232, 111 S.Ct. at 1793.

    4.    <u>Claims Related to Execution of the Search Warrant on May 16</u>.

As explained above, the participation of the named defendant officer is as follows: Cunningham supervised the execution of the search warrant and made sure that the only items seized were those identified as being pawned or sold by the two suspects, Pardee and Todd, or by persons using addresses known to have been used by Pardee and Todd; Courtney read off the serial numbers of items as they were removed from the pawn shop; and, the other individually named SPD law enforcement officers merely assisted Cunningham in executing the facially valid warrant.

Plaintiffs assert that all individually named defendants should be liable and are not entitled to qualified immunity because no reasonable Shreveport police officer could have believed it reasonable to execute a search warrant in Bossier City where the SPD has no jurisdiction. Plaintiffs refer the Court to Louisiana Code of Criminal Procedure articles 164 and 204. Article 164 states that "[i]n order to execute a search warrant a peace officer may use such means and force as are authorized for arrest by Title V." Title V, Arrest, article 204 states, in pertinent part, that:

> The warrant shall be directed to all peace officers in the state. It shall be executed only by a peace officer, and may be executed in any parish by any peace officer having authority in the territorial jurisdiction where the person arrested is found . . . .

In their reply, defendants Courtney and Cunningham assert that it is common for officers to

14

appear in other jurisdictions accompanied by members of a local police department. Defendants refer to this practice as "accommodation." Defendants Courtney and Cunningham's SUF, ¶6; Defendants' Exh. 1, Courtney Aff., ¶8; see also Plaintiffs' Exh. 6, Ross Depo., pp. 27-31. Defendants further assert that this practice has been referenced with approval by the Fifth Circuit. In reality, courts have treated this practice with indifference. See Creamer v. Porter, 754 F.2d 1311, 1314 (5th Cir. 1985) ("Because Creamer's establishment was outside of the city limits of Shreveport and the jurisdiction of the [SPD], arrangements had been made for two deputies from the Caddo Parish Sheriff's Office to be present for the search"); see also, Howell v. Roberts, 656 F.Supp. 1150 (N.D.Ga. 1987) (district court granted summary judgment finding that an arrest of a Butts County pawn broker by a Clayton County pawn detective based on a warrant issued by a Butts County judge was appropriate under the Fourth Amendment because there was probable cause for issuance of the warrant regardless of the detective's jurisdiction).

This Court finds that on May 16, 2003, the SPD officers named as defendants were executing a facially valid search warrant outside of their jurisdiction, and, although arguably violating state law, were reasonable to believe that the presence of officers from within the jurisdiction remedied any authorization problem. Thus, defendants are entitled to qualified immunity.

Since plaintiffs do not raise an issue as to the scope of the items seized pursuant to the warrant, the Court notes that the only real issue with regard to the execution of the search warrant is whether there was probable cause to obtain a search warrant in the first place. This Court has already determined that probable cause did exist.

5. <u>Wrongful Arrest Claims</u>.

Defendants assert, and this Court agrees, that there is no evidence that plaintiffs, or any of

their customers or employees, were arrested as a result of the SPD investigation. According to defendants, Cunningham merely controlled those persons entering and exiting the non-public area of Cash 'N A Flash during the execution of the warrant. Defendants Courtney and Cunningham's SUF, ¶18. No one was arrested during the execution of the search warrant. Defendants' Exh. 2, Cunningham Aff., ¶9. Plaintiffs offer no evidence to the contrary. Further, the Supreme Court has held that officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted. Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

As there is no evidence of any arrests, plaintiffs' claims for wrongful arrest must be dismissed. Even if plaintiffs allege that Cunningham, or any other named defendant, detained plaintiffs, their employees or customers during the search, there has been no constitutional violation under Summers, supra.

**B.    Remaining State Law Claims.**

In their opposition, plaintiffs concede that the Motion for Summary Judgment by the individual defendants, other than Courtney and Cunningham, should be granted with regard to plaintiffs' claims of defamation, false light and damages to the returned merchandise. Plaintiffs also concede that the Motion for Summary Judgment by the individual defendants, other than Courtney, Cunningham and Rei, should be granted with regard to plaintiffs' claims of intentional infliction of emotional distress. Accordingly, these claims are dismissed.

This Court declines to exercise jurisdiction over the remaining state law claims against Courtney, Cunningham and Rei.

## II. Claims Against the City of Shreveport.

### A. §1983 Claims.

Municipal liability under §1983 may not be based upon a theory of *respondeat superior*. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Id. at 694, 98 S.Ct. at 2037-38. To establish a municipality's liability for a constitutional tort, the plaintiff must show first, that the municipality adopted a policy with "deliberate indifference" to its known or obvious consequences, and second, that the municipality was the "moving force" behind the constitutional violation. Id.

Defendants assert, and this Court agrees, that plaintiffs have provided no evidence of a custom, policy or practice that could subject the City to liability under §1983. Defendants are the only parties to reference a "custom" – local officers will "accommodate" officers who wish to execute a search warrant outside of their jurisdiction. Plaintiffs have not cited, and the Court is not aware of any, authority to support an argument that such a custom or practice violates the Constitution. On the contrary, courts have generally treated such practices with indifference, as discussed supra.

Not having come forward with any evidence to support their claims against the City, plaintiffs' claims must fail as a matter of law.

### B. State Law Claims.

As with the remaining state law claims against the individual defendants, this Court declines to exercise jurisdiction over the state law claims against the City.

## CONCLUSION

For the reasons stated above, plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE**; plaintiffs' state constitutional claims against the individually named defendants, to the extent they parallel entirely plaintiffs' §1983 allegations, are **DISMISSED WITH PREJUDICE** as the individual defendants are entitled to qualified immunity under Moresi, supra; plaintiffs' state law claims of defamation, false light and damages to the returned merchandise against the individually named defendants, other than Courtney and Cunningham, are **DISMISSED WITH PREJUDICE**; plaintiffs' state law claims of intentional infliction of emotional distress against the individually named defendants, other than Courtney, Cunningham and Rei are **DISMISSED WITH PREJUDICE**; and plaintiffs' remaining state law claims are **DISMISSED WITHOUT PREJUDICE** as this Court declines to exercise jurisdiction over those claims.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE